FILED by ___ YH ___ D.C.

**Jul 25, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **19-20450-CR-SCOLA/TORRES**

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ALEX NAIN SAAB MORAN, and
ALVARO PULIDO VARGAS,
    a/k/a "German Enrique Rubio Salas,"

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1.    The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

## RELEVANT INDIVIDUALS AND ENTITIES

2.      Servicio Nacional Integrado de Administración Aduanera y Tributaria (the "SENIAT") or the National Integrated Service for the Administration of Customs Duties and Taxes was Venezuela's government revenue service.   SENIAT was a department, agency, and instrumentality of the government of Venezuela as those terms are used in the FCPA.

3.      Comisión de Administración de Divisas (the "CADIVI") or the Commission for the Administration of Currency Exchange was the government body in Venezuela that administered legal currency exchange in Venezuela, including the government-controlled rate of exchange between Venezuelan bolivars and U.S. dollars.   CADIVI was a department, agency, and instrumentality of the Venezuelan government as those terms are used in the FCPA.

4.      Guardia Nacional Bolivariana de Venezuela (the "GNB") or the Bolivarian National Guard of Venezuela was one of four military components of the National Armed Forces of Venezuela, charged with performing civil military defense roles for the government of Venezuela.   The GNB was a department, agency, and instrumentality of the Venezuelan government as those terms are used in the FCPA.

5.      The SENIAT, GNB, and CADIVI oversaw and controlled the importation of all goods into Venezuela.   The CADIVI was responsible for payment in U.S. dollars for goods imported into Venezuela.   In order to ensure valid payment, the CADIVI had a tracking system for goods imported into Venezuela.   Once goods arrived in Venezuela, officials from the SENIAT and GNB needed to verify the importation and take pictures of the imported goods with a GPS tag to show that the goods had been properly imported and inspected.   CADIVI also verified and inspected the imported goods.   After the inspection and verification by officials from the SENIAT, GNB, and CADIVI, these photographs along with the invoices and documents were submitted to

the CADIVI for final payment in U.S. dollars.

6.      Defendant **ALEX NAIN SAAB MORAN** was a citizen of Colombia.  **SAAB** was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

7.      **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, was a citizen of Colombia.  **PULIDO** was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

8.      Co-Conspirator 1 was a citizen of Colombia.  Starting at least as early as 2011, Co-Conspirator 1 spent significant time in Miami, Florida, in the Southern District of Florida.  Co-Conspirator 1 was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

9.      Co-Conspirator 2 was a citizen of Colombia.  Starting at least as early as 2011, Co-Conspirator 2 spent significant time in Miami, Florida, in the Southern District of Florida.  Co-Conspirator 1 was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

10.      Co-Conspirator 3 was a citizen of Colombia.  Co-Conspirator 3 traveled frequently to Miami, Florida, in the Southern District of Florida.  Co-Conspirator 3 was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

<u>**COUNT 1**</u>
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1.      Paragraphs 1 through 10 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around November 2011 until at least September 2015, in the Southern District of Florida, and elsewhere, the defendants,

**ALEX NAIN SAAB MORAN and**
**ALVARO PULIDO VARGAS,**
**a/k/a German Enrique Rubio Salas**,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, and other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, Title 18, United States Code, Sections 1956 and 1957; that is:

a.      to knowingly transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

b.      to knowingly engage in a monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activity is the following: (a) felony violations of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-3; and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators, including Co-Conspirators 1, 2, and 3, to unlawfully enrich themselves by making bribe payments

to Venezuelan foreign officials, in order to obtain improper business advantages, including the approval of false and fraudulent documents related to the importation of construction goods and materials, and to access Venezuela's government-controlled foreign currency exchange system, controlled by the CADIVI, to ensure payments were made in United States dollars based on false and fraudulent invoices and documents for goods that were never imported into Venezuela.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4.      In or around November 2011, **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, entered into a contract, through a company they owned and controlled, with the government of Venezuela to build low-income housing units (the "Housing Contract").

5.      **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, sought assistance from Co-Conspirators 1 and 2 with importing construction goods and materials into Venezuela.

6.      **ALEX NAIN SAAB MORAN, ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, and Co-Conspirators 1 and 2 hired Co-Conspirator 3, who was an independent customs broker with experience importing goods into Venezuela.

7.      **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, together with their co-conspirators, exploited the CADIVI's tracking system by using a single shipment of construction goods and materials to submit multiple

sets of false and fraudulent invoices and documents identifying it as a new shipment, even though it was not a new shipment. In some instances, at the direction of Co-Conspirator 3, Venezuelan officials employed by the SENIAT and GNB would take photographs of a single shipment of construction goods and materials in different locations to create the false impression of purported multiple shipments.

8.     **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, together with their co-conspirators, needed to make corrupt payments to Venezuelan government officials at the SENIAT, GNB, and CADIVI to secure their assistance in approving the false and fraudulent invoices and documents for goods that were never imported into Venezuela. On multiple occasions, **SAAB**, **PULIDO**, and Co-Conspirators 1, 2, and 3 discussed with one another making corrupt payments to Venezuelan government officials at the SENIAT, GNB, and CADIVI

9.     **ALEX NAIN SAAB MORAN**, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, and Co-Conspirators 1, 2, and 3 made and caused to be made numerous corrupt payments, by cash and wire transfer, to Venezuelan government officials employed at the SENIAT, GNB, and CADIVI to secure their assistance in approving false and fraudulent invoices and documents for goods that were never imported into Venezuela.

10.     As a result of these corrupt payments to Venezuelan government officials employed at the SENIAT, GNB, and CADIVI, the CADIVI made multiple payments on these false and fraudulent invoices and documents for construction goods and materials that were never imported.

11.     In or around November 2011, **ALEX NAIN SAAB MORAN**, **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, Co-Conspirator 3, and a customs official employed by the SENIAT met at a hotel in or around Caracas, Venezuela, and discussed

the coordination of corrupt payments related to importing construction goods and materials in connection with the Housing Contract.

12.     On or about March 5, 2014, and then again on or about March 9, 2014, Co-Conspirators 1 and 3 met in Miami, Florida, to discuss the status of corrupt payments to Venezuelan government officials.

13.     Shortly after the meetings referenced in Paragraph 12 above, in Miami, Florida, Co-Conspirator 1 called **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, to report on his conversation with Co-Conspirator 3.  Co-Conspirator 1 told **PULIDO** that corrupt payments were owed to Venezuelan government officials at the SENIAT, GNB, and CADIVI for facilitating the payments on the false and fictitious documents for construction goods and materials, which were never imported.  Co-Conspirator 1 said that the corrupt payments had to be made as soon as possible or the Venezuelan government officials would not continue to approve the false and fraudulent documents.

14.     Between on or about March 12, 2012, and on or about December 1, 2014, **ALEX NAIN SAAB MORAN, ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, and their co-conspirators caused wire transfers totaling approximately $350,041,500 to be made from bank accounts in Venezuela owned and controlled by **SAAB** and **PULIDO**, through correspondent bank accounts in the United States, and then to overseas bank accounts owned and controlled by **SAAB** and **PULIDO**.

15.     Between on or about January 16, 2014, and on or about September 15, 2015, **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas**, distributed profits and paid expenses related to the corrupt scheme by, among other things,

causing wire transfers to be made to bank accounts of Co-Conspirator 1 in the Southern District of Florida.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 2-8
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1.     Paragraphs 1 through 10 of the General Allegations Section and paragraphs 4 through 15 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth in each Count below, in the Southern District of Florida and elsewhere, the defendants,

**ALEX NAIN SAAB MORAN and
ALVARO PULIDO VARGAS,
a/k/a German Enrique Rubio Salas**,

did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (a) felony violations of the FCPA under Title 15, United States Code, Section 78dd-3; and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|-------|------------------|----------------------------|
| 2 | October 29, 2014 | Wire transfer in the amount of approximately $10,915 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |

| 3 | March 30, 2015 | Wire transfer in the amount of approximately $43,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |
|---|---|---|
| 4 | April 20, 2015 | Wire transfer in the amount of approximately $90,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |
| 5 | May 11, 2015 | Wire transfer in the amount of approximately $50,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |
| 6 | May 11, 2015 | Wire transfer in the amount of approximately $60,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |
| 7 | May 22, 2015 | Wire transfer in the amount of approximately $100,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |
| 8 | May 28, 2015 | Wire transfer in the amount of approximately $67,000 in U.S. currency from an account in Panama to a Citibank account (ending in 1593) located in the United States, specifically in the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(1))

1.     The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas,** have an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in Counts 1 through 8 of this Indictment, the defendants, **ALEX NAIN SAAB MORAN** and **ALVARO PULIDO VARGAS, a/k/a German Enrique Rubio Salas,** shall forfeit to the

9

United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

      3.     The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

          (i)     a sum of approximately $350,041,500.00 in U.S. currency, which represents the amount of funds involved in the violations of Title 18, United States Code, Section 1956 alleged in this Indictment, and which may be sought as a forfeiture money judgment;

          (ii)    approximately $3,225,593.90 in U.S. currency seized on or about August 20, 2018;

          (iii)   approximately $30,000.00 in U.S. currency seized on or about August 21, 2018;

          (iv)   approximately $3,313,757.69 in U.S. currency seized on or about September 24, 2018;

          (v)    approximately $3,138,844.70 in U.S. currency seized on or about November 5, 2018; and

          (vi)   approximately $2,942,501.37 in U.S. currency seized on or about February 13, 2019.

      4.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

          a.     cannot be located upon the exercise of due diligence;

          b.     has been transferred or sold to, or deposited with, a third party;

          c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property that cannot be divided without

            difficulty;

the United States shall be entitled to forfeiture of substitute property, under the provisions of

Title 21, United States Code, Section 853(p).

     All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set

forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States

Code, 982(b)(1).

                          A TRUE BILL

                          FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Michael B. Nadler
Assistant United States Attorney

John-Alex Romano
Trial Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| ALVARO ENRIQUE PULIDO-VARGAS, et al. | |
|            **Defendants.** | |
| _____/ | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| __X__ | Miami | _____ | Key West |
| _____ | FTL | _____ | WPB | _____ FTP |

| | | | |
|---|---|---|---|
| New Defendant(s) | Yes _____ | No _____ |
| Number of New Defendants | _____ |
| Total number of counts | _____ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    __YES__
   List language and/or dialect    __SPANISH__

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | __X__ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| II | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | __X__ |
| V: | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) __NO__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

Is this a potential death penalty case? (Yes or No) __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

_____
MICHAEL B. NADLER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 51264

\*Penalty Sheet(s) attached

REV 4/8/08

## PUNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ALEX NAIN SAAB-MORAN

**Case No**:

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:           Twenty (20) years' imprisonment

Counts #: 2-8

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\* Max. Penalty**:           Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## PUNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ALVARO ENRIQUE PULIDO-VARGAS, a/k/a German Enrique Rubio Salazar

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:            Twenty (20) years' imprisonment

Counts #: 2-8

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\* Max. Penalty**:            Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**